IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MELANCON \| RIMES, LLC,** | * | **DOCKET NO.: 14-cv-657** |
| **JASON L. MELANCON,** | * | |
| **STERBCOW LAW GROUP, LLC, AND** | * | **SECTION:** |
| **MARX D. STERBCOW** | * | |
| | * | |
| **VERSUS** | * | |
| | * | |
| **DOWNS LAW GROUP, P.A.,** | * | |
| **CRAIG T. DOWNS,** | * | |
| **JEREMY FRIEDMAN, AND** | * | |
| **DANIEL PEREZ** | * | |
| | * | |

**COMPLAINT TO CONDUCT DISCOVERY, FOR DAMAGES, AND FOR OTHER EQUITABLE RELIEF**

**NOW INTO COURT,** come Melancon | Rimes, LLC, Jason L. Melancon, Sterbcow Law Group, LLC, and Marx D. Sterbcow, (collectively referred to hereafter as "PETITIONERS"). Jason L. Melancon ("MELANCON") is the managing partner of Melancon | Rimes, LLC ("MR"), a Louisiana law firm. Marx D. Sterbcow ("STERBCOW") is the managing attorney of Sterbcow Law Group, LLC ("SLG"), also a Louisiana law firm. PETITIONERS respectfully aver as follows:

**INTRODUCTION**

1.

This Complaint arises from a dispute between two Louisiana attorneys, their respective law firms, and a Florida law firm (i.e. Downs Law Group, P.A.) ("DOWNS GROUP") and its individual partner Craig T. Downs ("CRAIG DOWNS"), and associates Jeremy Friedman ("FRIEDMAN") and Daniel Perez ("PEREZ"). The matter concerns the agreed upon sharing of attorney fees received from mutual clients who submitted claims pursuant to the *DEEPWATER*

*HORIZON* MEDICAL BENEFITS CLASS ACTION SETTLEMENT AGREEMENT ("SETTLEMENT AGREEMENT"). This dispute concerns the extent of their mutual clients and an intentional effort to preclude PETITIONERS from sharing in their rightful share of attorney's fees by willfully and intentionally disrupting existing written contingency fee agreements executed by mutual clients.

2.

On March 13, 2014, PETITIONERS sought to enforce their right to attorney fees and associated damages pursuant to a motion filed under Section XXVII of the SETTLEMENT AGREEMENT. On March 20, 2014, this Honorable Court denied the motion on the basis that the SETTLEMENT AGREEMENT provided for the claims administrator to resolve all attorney fee liens, claims, or rights of reimbursement under Section XXIA(8)(d). See Exhibit "A1." This Honorable Court further directed PETITIONERS to file a "separate action" from the pending BP OIL SPILL MDL action for any further relief ("Lastly, if Petitioners seek further relief, they may file a separate action stating their claims.") Accordingly, in addition to the attorney fee division now pending before the claims administrator, PETITIONERS seek statutory and punitive damages, attorney's fees, and costs for the unfair, deceptive, and fraudulent disruption of PETITIONERS' contractual rights under mutual contingency fee agreements.

3.

By way of background, members of the DOWNS GROUP initially reached out to SLG and MR for assistance in marketing and in signing Louisiana residents as medical claims benefit clients, who were reportedly suffering from those conditions identified in the SETTLEMENT AGREEMENT. DOWNS GROUP further requested that MR and SLG act as *pro hac vice* sponsors for DOWNS GROUP in an effort to object to the proposed SETTLEMENT

AGREEMENT. DOWNS GROUP further requested that MELANCON orally address those objections presented, to which request MELANCON complied.

4.

DOWNS GROUP further pursued PETITIONERS' assistance during the medical claims benefits process because Florida law prevented DOWNS GROUP from advancing medical costs for those clients needing medical evaluations before claim submission, whereas Louisiana law did not proscribe such prohibitions against Louisiana attorneys.

5.

DOWNS GROUP further requested access to MR's and SLG's Louisiana offices for client meetings located in South Louisiana. SLG provided supplies and refreshments for all client meetings.

6.

DOWNS GROUP eventually hired a non-Louisiana licensed attorney, who worked every day at SLG's offices, primarily on the BP medical claims benefits clients. DOWNS GROUP never paid any remuneration for the constant use of SLG's office space.

7.

The DOWNS GROUP employee informed STERBCOW that DOWNS GROUP was advancing medical costs for many Louisiana based clients, and DOWNS GROUP consistently used the offices of SLG and MR to sign contingency fee agreement with Louisiana based clients.

8.

In exchange for the efforts of MR and SLG, DOWNS GROUP proposed a written attorney fee sharing arrangement whereby MR and SLG would receive compensation totaling a percentage of recovery obtained by DOWNS GROUP equivalent to the amount of 10% of the

recovery obtained all mutual clients who submitted a medical benefits claim pursuant to the SETTLEMENT AGREEMENT.

9.

In accordance with the agreement, DOWNS GROUP drafted and executed contingency fee contracts with thousands of mutual clients, which contracts expressly included "Jason L. Melancon, Esq." and "Marx D. Sterbcow, Esq." as active counsel. MR and SLG dutifully performed all requested tasks in accordance with active co-counsel status.

10.

On September 24, 2013, while working at the office of SLG, the DOWNS GROUP employee, Amled Perez, provided STERBCOW with the first list of mutual clients spanning over 1,700 names. Around early October 2013, the DOWNS GROUP employee notified STERBCOW that DOWNS GROUP might not share the attorney fees derived from those medical benefit clients who submitted claims pursuant to the SETTLEMENT AGREEMENT with MR and SLG.

11.

Accordingly, MR requested via email a list of mutual clients to determine the exact number of mutual clients. DOWNS GROUP only provided a list of 73 names. When MR and SLG confronted DOWNS GROUP about the discrepancy, DOWNS GROUP indicated that PETITIONERS were not co-counsel for over 1,700 mutual clients, and possibly over 1,000 Louisiana residents. Emails provided from the DOWNS GROUP employee showed a subsequent conspiracy by CRAIG DOWNS, FRIEDMAN, and PEREZ to send out letters advising the mutual clients that MELANCON and STERBCOW were no longer co-counsel, despite being expressly identified on the contingency fee contracts. The emails further expressed

the intent to have all clients execute new contingency fee agreements that intentionally removed the names of MELANCON and STERBCOW from the contracts. PETITIONERS recently learned that on October 22, 2014 the defendants did in fact mail to all clients new contingency fee contracts that intentionally removed the names of Jason L. Melancon and Marx D. Sterbcow.

12.

PETITIONERS submit that DOWNS GROUP fraudulently induced MR and SLG to enter into a co-counsel arrangement. DOWNS GROUP sought to obtain the legal and practical benefits of marketing and signing over 1,000 Louisiana resident clients without any real expectation of ultimately fulfilling its contractual obligations.

13.

MR and SLG seek damages and other equitable relief for the unfair, deceptive, fraudulent, willful, and wanton disruption of PETITIONERS' underlying contingency fee contracts, or (2) in the alternative, the attorney participation agreement; and (3), in the alternative, MR and SLG seeks to have the DOWNS GROUP stricken as counsel of record for all Louisiana clients given their unauthorized practice of law in marketing and signing Louisiana residents and further holding an office space in Louisiana without a licensed Louisiana attorney co-counseling on said cases, and thereby naming MR and SLG as the exclusive counsel of record for all Louisiana clients. Finally, MR, SLG, MELANCON, and/or STERBCOW further seek statutory and punitive damages and attorney fees and costs as otherwise provided by law.

**PARTIES**

14.

Jason L. Melancon ("MELANCON") is a named plaintiff herein. He is domiciled in the State of Louisiana, and manages the plaintiff law firm of Melancon | Rimes, LLC ("MR"), a Louisiana limited liability company.

15.

Marx D. Sterbcow ("STERBCOW") is a named plaintiff herein. He is domiciled in the State of Louisiana, and manages the plaintiff law firm of Sterbcow Law Group, LLC ("SLG"), a Louisiana limited liability company.

16.

Craig T. Downs ("CRAIG DOWNS") is a named defendant herein. He is domiciled in the State of Florida, and manages the defendant law firm of Downs Law Groups, P.A. ("DOWNS GROUP"), a Florida based company.

17.

Jeremy Friedman ("FRIEDMAN") is a named defendant herein. He is domiciled in the State of Florida, and is an associate with defendant DOWNS GROUP.

18.

Daniel Perez ("PEREZ") is a named defendant herein. He is domiciled in the State of Florida, and is an associate with defendant DOWNS GROUP.

**JURISDICTION AND VENUE**

19.

It is well settled that a federal court may resolve controversies concerning attorneys' fees when the dispute arises from litigation before it, under both the court's ancillary jurisdiction and its inherent power to regulate attorneys who practice before it. See, e.g., *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251 (2d Cir.1988); *Pay Television of Greater New York, Inc. v. Sheridan*, 766 F.2d 92 (2d Cir.1985); *American Federation of Tobacco–Growers v. Allen*, 186 F.2d 590 (4th Cir.1951); *Iowa v. Union Asphalt & Roadoils, Inc.*, 409 F.2d 1239 (8th Cir.1969); *Jenkins v. Weinshienk*, 670 F.2d 915 (10th Cir.1982). This jurisdiction continues even after the original dispute has gone to judgment or been settled. *Novinger v. E.I. DuPont de Nemours & Co.*, 809 F.2d 212 (3d Cir.), cert. denied, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987); *Sherrier v. Richard*, 600 F.Supp. 527 (S.D.N.Y.1984). In addition, where the dispute concerns fees to be paid out of proceeds of the litigation, the court's ancillary jurisdiction arises from its authority to control the distribution of those proceeds. See, e.g., *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841 (2d Cir.1977).

20.

Section XXVII of the SETTLEMENT AGREEMENT provides that the Eastern District of Louisiana possesses exclusive jurisdiction over all parties, medical benefits class members, and their counsel with respect to all disputes concerning the implementation and enforcement of the SETTLEMENT AGREEMENT.

21.

As per this Honorable Court’s order dated March 20, 2014, PETITIONERS filed a notice of lien and dispute before the medical benefits claims administrator with respect to the attorney

fee allocation, specifically. The SETTLEMENT AGREEMENT provides that the claims administrator shall administer the settlement, including the resolution of liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments of interests of any type. See Section XXIA.8(d).

22.

However, as also per this Honorable Court's order dated March 20, 2014, PETITIONERS file this complaint for further relief over and above the attorney fee division (i.e. statutory and punitive damages, attorney fees, and costs). This action concerns additional damages arising from those attorney fee proceeds paid through the underlying litigation. As ordered by this Honorable Court, PETITIONERS now file this action separate and apart from the primary BP Spill MDL matter, but still within the exclusive jurisdiction of the Eastern District of Louisiana.

23.

PETITIONERS further allege *in personam* jurisdiction before this Honorable Court where the Defendants knowingly engaged in a pattern and course of conduct throughout the State of Louisiana, including the greater New Orleans area. Defendants held a continuous office presence within the Eastern District of Louisiana for the purpose of signing up hundreds of medical benefit claim clients. Defendants actively marketed for Louisiana citizens through print and radio advertisements. Defendants further interfered with PETITIONERS' contractual rights for those mutual clients located throughout the Eastern District of Louisiana.

24.

Jurisdiction is further premised upon diversity jurisdiction pursuant to 28 U.S.C. §1332(a). The parties are diverse and the matter exceeds $75,000.00, exclusive of legal interest and court costs.

25.

Venue is proper where a substantial part of the events giving rise to the claim occurred pursuant to 28 U.S.C. §1391(b)(2).

**FACTUAL BACKGROUND**

26.

In or around August, 2012, FRIEDMAN of DOWNS GROUP contacted STERBCOW of SLG regarding a possible co-counsel arrangement. FRIEDMAN advised STERBCOW that DOWNS GROUP signed several Spanish speaking Florida residents as clients. These clients experienced medical problems after working the BP clean-up operation.

27.

FRIEDMAN advised STERBCOW that DOWNS GROUP wanted to market and to sign Spanish speaking Louisiana residents that also worked in the BP clean-up operation. FRIEDMAN asked STERBCOW whether he would be interested in helping them not only secure Louisiana residents as clients, but also whether STERBCOW would assist them in obtaining *pro hac vice* status in the above captioned matter.

28.

STERBCOW of SLG reached out to MELANCON of MR about working with DOWNS GROUP. STERBCOW and MELANCON worked on a number of cases in co-counsel arrangements, with MELANCON generally handling the direct litigation efforts. MELANCON

agreed to work on the medical benefits claims with STERBCOW and left to STERBCOW the contractual negotiations with DOWNS GROUP.

29.

Ultimately, STERBCOW reached an agreement with DOWNS GROUP'S representatives regarding the work to be performed by MR and SLG in exchange for a percentage of the recovery from all medical benefits clients signed by DOWNS GROUP. After verbal discussions, on or about August 26, 2012, FRIEDMAN of DOWNS GROUP solely drafted and emailed STERBCOW of SLG a proposed "attorney participation agreement." See Exhibit "A." The agreement outlined the roles performed by MR and SLG and provided MR and SLG with 10% of any recovery obtained from the medical benefits claims process. STERBCOW executed the contract in writing, while MELANCON agreed to its terms in a separate email. See Exhibit "B." Although DOWNS GROUP' representatives now claim to have never agreed to these terms and intentionally refused to execute the contract it delivered, nevertheless, DOWNS GROUP'S representatives ratified the agreement by performance of same.

30.

The "attorney participation agreement" further memorialized the obligation by MR and SLG to sponsor Craig Down, FRIEDMAN, and PEREZ and/or other employees or agents of DOWNS GROUP for *pro hac vice* status before this Honorable Court. DOWNS GROUP agents further expressed their intention to market Louisiana residents through print, yard sign, and radio advertisements given MR's and SLG's direct participation. DOWNS GROUP agents requested that MR and SLG provide their offices for the purposes of signing contingency fee contracts with Louisiana residents. DOWNS GROUP agents discussed Florida limitations on paying advanced

medical costs, where the claims process required proof of ailments, and MR and SLG right to pay such advanced costs under Louisiana law.

31.

Following execution of the "attorney participation agreement," DOWNS GROUP agents further placed the names of MELANCON and STERBCOW on each contingency fee contract executed with each medical benefits client through sometime around November of 2013. See Exemplar Contingency Fee Contracts attached as Exhibit "C" and "D."

32.

Following execution of the "attorney participation agreement," PETITIONERS dutifully performed all obligations as set forth in said agreement. In fact, PETITIONERS far surpassed the scope of their representation as set forth in same. For example, MELANCON spoke on behalf of certain objectors at the fairness hearing for the SETTLEMENT AGREEMENT, filed a notice of appeal and notice of appearance before the United States Court of Appeals for the Fifth Circuit, and provided office space for the signing of mutual clients as requested.

33.

MR and SLG agreed to assist DOWNS GROUP, in particular with respect to marketing and to signing Louisiana residents, because Louisiana Supreme Court Rule XVII §13(B)(7) prohibited DOWNS GROUP from actively soliciting Louisiana residents without a co-counsel arrangement. Section 13(B)(7) entitled "No Solicitation" provides that no out-of-state attorney is authorized to hold himself out, to non-lawyers who have not requested the out-of-state lawyer's presence, as available to assist in potential suits; and out-of-state attorneys may not solicit, advertise, or otherwise hold themselves out in publications directed solely to this state as available to assist in litigation in this state.

34.

To the extent that DOWNS GROUP actively solicited Louisiana residents without having MR and SLG act as co-counsel of record, which DOWNS GROUP now contends, DOWNS GROUP, CRAIG DOWNS, FRIEDMAN, and PEREZ violated Louisiana Supreme Court Rule XVII §13(B)(7), and, therefore, engaged in the unauthorized practice of law in Louisiana by actively soliciting Louisiana residents as client in both print and radio advertising.

35.

Eventually, DOWNS GROUP representatives requested that SLG provide its New Orleans area law office not only for the purpose of meeting with clients, but also to staff said office with a full-time Spanish speaking attorney employee, Amled Perez. This DOWNS GROUP employee was not licensed to practice law in the State of Louisiana.

36.

MR and SLG agreed to assist DOWNS GROUP with providing its employee with SLG's New Orleans area law office because pursuant to Louisiana Rules of Professional Responsibility Rule 5.5 entitled "Unauthorized Practice of Law; Multijurisdictional Practice of Law," a lawyer not admitted to practice in Louisiana shall not establish an office or other systematic and continuous presence in Louisiana for the practice of law.

37.

To the extent that DOWNS GROUP instructed its employee to establish an office or other systematic or continuous presence in this jurisdiction for the purpose of signing Louisiana residents without SLG and MR acting as co-counsel, which DOWNS GROUP now contends, DOWNS GROUP, CRAIG DOWNS, FRIEDMAN, and PEREZ violated Louisiana Rules of

Professional Responsibility Rule 5.5, and, therefore, engaged in the unauthorized practice of law in Louisiana.

38.

The DOWNS GROUP employee eventually informed STERBCOW that DOWNS GROUP did not consider MR, SLG, STERBCOW, or MELANCON as co-counsel on all medical benefits claims cases. MELANCON issued an email requesting a listing of all mutual clients to date. DOWNS GROUP replied with a list of only 73 clients. See Exhibit "E." The DOWNS GROUP contractor worker provided a listing of all medical claims benefit employees, including over 1,000 Louisiana residents. *See* Exhibit "F."

39.

An email dated October 22, 2013 evidences internal discussions between DOWNS GROUP agents, including CRAIG DOWNS, FRIEDMAN, and PEREZ, to surreptitiously notify the mutual clients in writing for the purpose of falsely and deceptively stating that MR, SLG, STERBCOW, and/or MELANCON were no longer actively representing the medical benefits class members. *See* Exhibit "G." The letter stated in pertinent part:

> Finally, please be advised that we had initially agreed that the law firms of Melancon Rimes and the Sterbcow Law Group would provide assistance to the objection and appeal only. As these issues are no longer pending, these entities are no longer acting on your behalf. This will have no effect on any recovery that you may have, however, we wanted to keep you informed as to any developments related to your case.
>
> Something like that. ***Sure it is self serving*** but it can't hurt and we do have an obligation to keep the clients advised. (Emphasis added)

This email clearly indicates an attempt to knowingly and wantonly interfere with PETITIONERS' legal representation of those medical benefits clients.

40.

On October 22, 2013, CRAIG DOWNS, FRIEDMAN, and/or PEREZ ratified the sending of the letters to each client, and, on that date, DOWNS GROUPS' agents and representatives issued new contingency fee contracts to each mutually represented client. Defendants collectively issued these new contracts to interrupt PETITIONERS' ongoing representation of those mutual clients, including the over 1,000 mutual Louisiana citizen clients. See Exhibit "H" and "I."

**LEGAL THEORIES OF RECOVERY**

**COUNT ONE: BREACH OF JOINT VENTURE AND FIDUCIARY DUTY**

**COUNT ONE: UNFAIR TRADE PRACTICES AND FRAUD**

41.

DOWNS GROUP and its defendant agents, including CRAIG DOWNS, FRIEDMAN, and PEREZ, fraudulently and knowingly induced MR, SLG, STERBCOW, and MELANCON to assist defendants for the purpose of circumventing Louisiana's prohibitions against out-of-state attorney marketing and signing Louisiana clients.

42.

DOWNS GROUP and its defendant agents, including CRAIG DOWNS, FRIEDMAN, and PEREZ, fraudulently and knowingly induced MR, SLG, STERBCOW, and MELANCON to assist defendants for the purpose of circumventing Louisiana's prohibitions against out-of-state attorney establishing an office or other systematic and continuous presence in this jurisdiction for the practice of law.

43.

DOWNS GROUP and its defendant agents, including CRAIG DOWNS, FRIEDMAN, and PEREZ, did fraudulently and knowingly induced MR, SLG, STERBCOW, and MELANCON to assist in securing Louisiana residents as clients with full knowledge that they never intended to share in attorney fees derived from all mutual Louisiana residents.

44.

Subsequent to this engagement, DOWNS GROUP violated laws governing unfair trade practices and fraud by contacting each mutual client with the express purpose of having mutual clients execute a new contingency fee agreement. On October 22, 2014, Defendants mailed false and misleading letters erroneously stating that "Jason L. Melancon" and "Marx D. Sterbcow" were no longer representing their interests. This surreptitious letter requested that each client execute a new contingency fee agreement. These new contracts did not contain the names of "Jason L. Melancon" and "Marx D. Sterbcow." The contracts were issued upon the dispute arising in October 2014, and were issued with the express intent to unfairly and deceptively interfere with PETITIONERS' contractual relationship with their mutual clients.

45.

MR, SLG, STERBCOW, and MELANCON seek statutory and punitive damages, along with attorney fees and costs, for these unfair, deceptive, malicious, willful, and wanton attempts to interfere with PETITIONERS' contractual rights, pursuant to Florida and Louisiana state laws governing unfair trade practices and fraudulent practices.

**WHEREFORE**, **PETITIONERS PRAY** for an order granting the right to conduct discovery under this caption for the purpose of having the claims administrator determine the proper allocation of attorney's fees between PETITIONERS and Defendants pursuant to Section XXIA(8)(d) of the Medical Benefits Class Settlement Agreement as Amended May 1, 2012.

**PETITIONERS FURTHER PRAY** that citations and summons to appear be issued to Defendant Downs Law Group, P.A. and its Defendant agents Craig T. Downs, Jeremy Friedman, and Daniel Perez, and that there be judgment rendered herein in favor of PETITIONERS and against Defendants *en solido* for statutory and/or punitive damages, including legal interest from the date of judicial demand until paid, and all costs of these proceedings, as otherwise permitted under any Louisiana, Florida, or federal law.

**PETITIONERS FURTHER PRAY** that there be judgment rendered herein awarding PETITIONERS attorney fees against Downs Law Group, P.A. and its defendant agents Craig T. Downs, Jeremy Friedman, and Daniel Perez, as otherwise permitted under any contract and/or Louisiana, Florida, or other federal law.

**PETITIONERS FURTHER PRAY** for equitable relief, in the alternative, such that there be judgment rendered herein extinguishing the contingency fee contracts between the Downs Law Group, P.A. and/or its defendant agents Craig T. Downs, Jeremy Friedman, and Daniel Perez for the unauthorized practice of law in Louisiana, and thereby appointing the law firms Melancon | Rimes, LLC and Sterbcow Law Group, LLC to solely and to exclusively act on behalf of those Louisiana clients, only, and to apportion all attorney's fees derived from the Louisiana clients to the law firms of Melancon | Rimes, LLC and Sterbcow Law Group, LLC exclusively.

Respectfully Submitted:

**Melancon | Rimes**

s/ Jason L. Melancon

**Jason L. Melancon, La. Bar No. 28152**
**Robert C. Rimes, La. Bar No. 28740**
**Rachel Abadie, La. Bar No. 34413**
8706 Jefferson Hwy., Suite B
Baton Rouge, LA 70809
Telephone: (225) 303-0455
Fax: (225) 303-0459
jason@melanconrimes.com

**Sterbcow Law Group, LLC**

s/ Marx D. Sterbcow

**Marx D. Sterbcow, La. Bar No. 28425**
1734 Prytania Street
New Orleans, LA 70130
Telephone: (504) 523-4930
Fax: (888) 241-6248